**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**Southern Division (Greenbelt)**

MICHELLE MORELLI, individually and
on behalf of all others similarly situated,

        *Plaintiff,*

v.

JIM KOONS MANAGEMENT COMPANY,
dba JIM KOONS AUTOMOTIVE
COMPANIES
9822 Sorell Avenue
Potomac, MD 20854,

Serve:  Registered Agent:
        Thomas M Wood IV, Esq.
        27th FLR
        One South Street
        Baltimore MD 21202

        *Defendant*.

Case No. _____

**JURY DEMAND**

## CONSUMER CLASS ACTION COMPLAINT

Plaintiff MICHELLE MORELLI ("Plaintiff") brings this Class Action Complaint against

JIM KOONS MANAGEMENT COMPANY, dba JIM KOONS AUTOMOTIVE COMPANIES

("Defendant" or "Koons"), in her individual capacity and on behalf of all others similarly situated,

and alleges, upon personal knowledge as to her own actions and her counsels' investigations, and

upon information and belief as to all other matters, as follows:

### I. INTRODUCTION

1.    This class action arises out of the recent data breach ("Data Breach") involving

Defendant, a domestic for-profit automotive group with locations in and around the Washington,

D.C. metro area.

2.    Koons failed to reasonably secure, monitor, and maintain Personally Identifiable

Information ("PII") provided by consumers, including, without limitation, full names, addresses,

Social Security numbers, driver's license numbers, and financial account information of consumers stored on its private network. As a result, Plaintiff and other current and former consumers suffered present injury and damages in the form of identity theft, loss of value of their PII, out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the unauthorized access, exfiltration, and subsequent criminal misuse of their sensitive and highly personal information.

3.      Moreover, after learning of the Data Breach, Defendant waited over six months to notify Plaintiff and Class Members of the Data Breach and/or inform them that their PII was compromised. During this time, Plaintiff and Class Members were unaware that their sensitive PII had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm.

4.      By obtaining, collecting, using, and deriving a benefit from the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion. Defendant's conduct in breaching these duties amounts to negligence and/or recklessness and violates federal and state statutes.

5.       Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to take reasonable steps to protect the PII of Plaintiff and Class Members and warn Plaintiff and Class Members of Defendant's inadequate information security practices. Defendant disregarded the rights of Plaintiff and Class Members by knowingly failing to implement and maintain adequate and reasonable measures to ensure that the PII of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized

disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use.

6.      As a direct and proximate result of Defendant's data security failures and the Data Breach, the PII of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party, and Plaintiff and Class Members have suffered actual, present, concrete injuries. These injuries include: (i) the current and imminent risk of fraud and identity theft  (ii) lost or diminished value of PII ; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; and (v) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII; (vi)  the invasion of privacy; (vii) the compromise, disclosure, theft, and unauthorized use of Plaintiff's and the Class Members' PII; and (viii) emotional distress, fear, anxiety, nuisance and annoyance related to the theft and compromise of their PII.

7.      Plaintiff and Class Members seek to remedy these harms and prevent any future data compromise on behalf of themselves and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and remains at risk due to inadequate data security.

8.      Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II. PARTIES

### Plaintiff Michelle Morelli

9.     Plaintiff Michelle Morelli is, and at all times relevant has been, a resident and citizen of Illinois, where she intends to remain. Plaintiff received a "Notice of Security" letter dated January 14, 2022, on or about that date[1].  The letter notified Plaintiff that on June 5, 2021, Koons identified unusual activity on its network and that "an unauthorized action gained access to a portion of the network and encrypted network files." The type of data at issue included full names, addresses, Social Security numbers, driver's license numbers, and financial account information of Koon's customers.[2]  The letter further advised that Plaintiff that she should spend time reviewing her bank statements and monitor her credit reports for suspicious activity.

10.     Defendant obtained and continues to maintain Plaintiff's and Class Members' PII and has a continuing legal duty and obligation to protect that sensitive information from unauthorized access and disclosure. Defendant required the PII from Plaintiff. Plaintiff, however, would not have entrusted her PII to Defendant had she known that it would fail to maintain adequate data security. Plaintiff's PII was compromised and disclosed as a result of the Data Breach.

### Defendant Jim Koons Automotive Group

11.     Defendant Koons is Maryland corporation with a principal office location of 9822 Sorrell Avenue, Potomac, Maryland 20854, and is the owner of Jim Koons Automotive Companies. Koons owns and operates 22 locations throughout the Mid-Atlantic Region. Koons is

---

[1] Exhibit 1 hereto.

[2] https://www.jdsupra.com/legalnews/data-breach-alert-jim-koons-automotive-5274951/ (Last visited on Jan. 27, 2022).

one of the 15 largest privately-held dealership organizations in the United States and largest automotive group headquartered in Delaware and the Washington, DC metro area – including Virginia and Maryland.

12.    All of Plaintiff's claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

### III. JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members are citizens of a different state than Defendant. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

14.    This Court has personal jurisdiction over Koons because it is headquartered in and maintains its principal place of business in this District. Koons is authorized to and regularly conducts business in Maryland. In this District, Koons makes decisions regarding corporate governance and management of its businesses, including decisions regarding the security measures to protect its customers' PII. Koons intentionally avails itself of this jurisdiction by promoting, selling and marketing its services from Maryland to thousands of consumers nationwide. Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because Koons' headquarters and principal place of business are located in this District, Koons resides in this District, and substantial parts of the events or omissions giving rise to the claims occurred in or emanated from this District, including, without limitation, decisions made by Koons' governance and management personnel

or inaction by those individuals that led to misrepresentations, invasions of privacy, and the Data Breach.

## IV. FACTUAL ALLEGATIONS

### *Background*

15.    Defendant is an automotive group, selling various makes of automobiles, including Toyota, Scion, Lexus, Chevrolet, Buick, GMC, Chrysler, Dodge, Jeep, Ram, Ford, Volvo, Lincoln, Kia, Mercedes-Benz, Smart and Sprinter brands.

16.    Plaintiff and Class Members were customers and/or employees of Defendant whose PII was required to be provided, and was in fact provided, to Defendant in conjunction with purchasing, leasing, selling, and trading of automobiles or during the court of their employment with Defendant. Plaintiff's and Class Members' PII were required to fill out various forms of paperwork, including without limitation applications for purchase agreements, loan applications, authorizations to check credit, and other form documents associated with the purchase, leasing, selling, or trading of automobiles, and employment documentation.

17.    Plaintiff and Class Members relied on the sophistication of Defendant and its network to keep their PII confidential and securely maintained, to use this information for business and/or employment purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members demand security to safeguard their PII.

18.    Defendant required the submission of and voluntarily accepted the PII as part of its business and had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class Members from involuntary disclosure to third parties. Koons has a legal duty to keep consumer's PII safe and confidential.

19.    The information held by Defendant in its computer systems and networks included the PII of Plaintiff and Class Members.

20.    Defendant derived a substantial economic benefit from collecting Plaintiff's and Class Members' PII.  Without the required submission of PII, there would have been no purchase, lease, sales, or trades of automobiles, and no financing transactions for the purchase or lease of automobiles, and no one employed by Defendant to conducts its business operations.

21.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Koons assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure.

22.    Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their PII.

***The Data Breach***

23.    On June 5, 2021, Defendant "discovered unusual activity on certain computer systems."[3]

24.    According to Defendant, Koons alleges that it "confirmed that an unauthorized actor gained access to a portion of the network and encrypted network files."[4]

25.    To date, Koons has not revealed when the unauthorized actor first gained access to a portion of Defendant's network, nor has it revealed the mechanism by which the unauthorized actor first gained access to Defendant's network.

26.    Upon information and belief, the unauthorized actor gained access to Koons' network well in advance of the June 5, 2021 date that the intrusion was first discovered by Koons,

---

[3] https://apps.web.maine.gov/online/aeviewer/ME/40/ec8e5dc7-e259-4847-8a94-23b789691b54.shtml
[4] *Id.*

meaning that the unauthorized actor had unfettered and undetected access to Defendant's networks for a considerable period of time prior to Koons' becoming aware of the unauthorized access to its computer systems and network.

27.     After Koons initially discovery the unauthorized access to its systems, Koons commissioned computer forensic specialists to conduct an investigation to determine the nature and scope of the event.

28.     The investigation commissioned by Koons did not conclude until December 21, 2021, and notice was not sent to victims of the data breach until nearly a month after that.[5]  Thus, the victims of this Data Breach, including Plaintiff and Class Members, were not sent notice of this Data Breach until approximately seven (7) months after Koons first knew about this Data Breach.

29.     Defendant acknowledged that "an unauthorized actor gained access to a portion of the network and encrypted network files."[6]

30.     Defendant's investigation was inconclusive whether or not the accessed data has been or will be misused by the hackers.[7]  However, upon information and belief, Koons has no methods, policies, or procedures in place that would afford its customers (like Plaintiff and Class Members) any mechanism or opportunity to report misuse of the data back to Koons, and the investigation commissioned by Koons did not survey Koons' clients whose data was breached for evidence of misuse.

---

[5] *Id.*
[6] *Id.*
[7] *Id.*

31.     The attacker accessed, and likely acquired, files on the server containing PII, including names, addresses, Social Security numbers, driver's license numbers, and financial account information.

32.     On or around January 14, 2022, Defendant also disclosed the Data Breach to the Maine Attorney General's Office[8], the California Attorney General's Office[9], and the Massachusetts Office of Attorney General.[10]

33.     Koons first notified its impacted consumers of the incident on or around January 14, 2022, sending written notifications to individuals whose personal information was compromised in the Data Breach.

34.     Plaintiff's and Class Members' PII was accessed and stolen in the Data Breach.

35.     Plaintiff further believes her PII, and that of Class Members, was subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type

36.     To prevent and detect cyber-attacks attacks Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

---

[8] *Id.*
[9] https://oag.ca.gov/ecrime/databreach/reports/sb24-549996
[10] https://www.mass.gov/doc/data-breach-report-2022/download

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

37.     To prevent and detect cyber-attacks Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you

know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[11]

38.     To prevent and detect cyber-attacks attacks Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

-     Apply latest security updates
-     Use threat and vulnerability management
-     Perform regular audit; remove privileged credentials;

---

[11] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at:* https://us-cert.cisa.gov/ncas/tips/ST19-001 (last visited Nov. 11, 2021).

**Thoroughly investigate and remediate alerts**

-       Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

-       Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

-       Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**

-               Monitor for adversarial activities
-               Hunt for brute force attempts
-               Monitor for cleanup of Event Logs
-               Analyze logon events;

**Harden infrastructure**

-               Use Windows Defender Firewall
-               Enable tamper protection
-               Enable cloud-delivered protection
-               Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[12]

39.     Given that Defendant was storing the PII of Plaintiff and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyber-attacks.

40.     The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent ransomware attacks, resulting in the Data

---

[12] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at:* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited Nov. 11, 2021).

Breach and the exposure of the PII of an undisclosed amount of current and former consumers, including Plaintiff and Class Members.

### *Defendant Acquires, Collects, and Stores the PII of Plaintiff and Class Members*

41.    Defendant has historically acquired, collected, and stored the PII of Plaintiff and Class Members.

42.    As part of being a customer and/or employee of Defendant, Plaintiff and Class Members, are required to give their sensitive and confidential PII to Defendant. Defendant retains and stores this information, and derives a substantial economic benefit from the PII that it collects. But for the collection of Plaintiff's and Class Members' PII, Defendant would be unable to sell or lease any automobiles or employ anyone for the purpose of assisting Defendant with selling or leasing any automobiles.

43.    By obtaining, collecting, and storing the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII from disclosure.

44.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep their PII confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

45.    Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the PII of Plaintiff and Class Members.

46.    Defendant's policies on its website include promises and legal obligations to maintain and protect PII, demonstrating an understanding of the importance of securing PII.[13]

---

[13] https://www.koons.com/privacy.htm

47.     Defendant's negligence in safeguarding the PII of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

48.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

**_Defendant Knew or Should Have Known of the Risk Because the Automotive Sector is Particularly Susceptible to Cyber Attacks_**

49.     Defendant knew and understood unprotected or exposed PII in the custody of automotive companies, such as Defendant, is valuable and highly sought after by nefarious third parties seeking to illegally monetize that PII through unauthorized access, as automotive dealers maintain highly sensitive PII, including Social Security numbers and financial information.

**_Value of Personally Identifiable Information_**

50.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[14] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[15]

51.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, Personal Information can be sold at a price ranging from $40 to $200,

---

[14] 17 C.F.R. § 248.201 (2013).
[15] _Id._

and bank details have a price range of $50 to $200.[16] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[17] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[18]

52.     Social Security numbers, for example, are among the worst kind of PII to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[19]

53.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

---

[16] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at:* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Jan. 19, 2022).

[17] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at:* https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited Jan 19, 2022).

[18] *In the Dark*, VPNOverview, 2019, *available at:* https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Jan. 19, 2022).

[19] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at:* https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Jan. 19, 2022).

54.    Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[20]

55.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number, driver's license number, addresses, and financial information.

56.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[21]

57.    Among other forms of fraud, identity thieves may use Social Security numbers to obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

58.    Driver's license numbers are also incredibly valuable. "Hackers harvest license numbers because they're a very valuable piece of information. A driver's license can be a critical

---

[20] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited Jan. 19, 2022).

[21] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Nov. 11, 2021).

-16-

part of a fraudulent, synthetic identity – which go for about $1200 on the Dark Web. On its own, a forged license can sell for around $200."[22]

59.    According to national credit bureau Experian:

A driver's license is an identity thief's paradise. With that one card, someone knows your birthdate, address, and even your height, eye color, and signature. If someone gets your driver's license number, it is also concerning because it's connected to your vehicle registration and insurance policies, as well as records on file with the Department of Motor Vehicles, place of employment (that keep a copy of your driver's license on file), doctor's office, government agencies, and other entities. Having access to that one number can provide an identity thief with several pieces of information they want to know about you.

Next to your Social Security number, your driver's license number is one of the most important pieces of information to keep safe from thieves.[23]

60.    According to cybersecurity specialty publication CPO Magazine, "[t]o those unfamiliar with the world of fraud, driver's license numbers might seem like a relatively harmless piece of information to lose if it happens in isolation."[24] However, this is not the case. As cybersecurity experts point out:

"It's a gold mine for hackers. With a driver's license number, bad actors can manufacture fake IDs, slotting in the number for any form that requires ID verification, or use the information to craft curated social engineering phishing attacks."[25]

61.    Victims of driver's license number theft also often suffer unemployment benefit fraud, as described in a recent New York Times article.[26]

---

[22] https://www.forbes.com/sites/leemathews/2021/04/20/hackers-stole-customers-license-numbers-from-geico-in-months-long-breach/?sh=3e4755c38658 (last accessed July 20, 2021).

[23] Sue Poremba, *What Should I Do If My Driver's License Number is Stolen?"* (October 24, 2018) https://www.experian.com/blogs/ask-experian/what-should-i-do-if-my-drivers-license-number-is-stolen/ (last accessed July 20, 2021).

[24] https://www.cpomagazine.com/cyber-security/geico-data-breach-leaks-drivers-license-numbers-advises-customers-to-watch-out-for-fraudulent-unemployment-claims/ (last accessed July 20, 2021).

[25] *Id.*

[26] *How Identity Thieves Took My Wife for a Ride,* NY Times, April 27, 2021 https://www.nytimes.com/2021/04/27/your-money/identity-theft-auto-insurance.html (last accessed July 20, 2021).

62.     The fraudulent activity resulting from the Data Breach may not come to light for years.

63.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[27]

64.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members, including Social Security numbers, driver's license numbers, and financial account information, and of the foreseeable consequences that would occur if Defendant's data security system and network was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

65.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

66.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's server(s), amounting to potentially thousands of individuals' detailed PII, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

---

[27] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last visited Jan. 19, 2022).

67.     In the breach notification letter, Defendant made an offer of 12 months of credit and identity monitoring services. This is wholly inadequate to compensate Plaintiff and Class Members as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud, and it entirely fails to provide sufficient compensation for the unauthorized release and disclosure of Plaintiff's and Class Members' PII.

68.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

69.     The ramifications of Defendant's failure to keep secure the PII of Plaintiff and Class Members are long lasting and severe. Once PII is stolen, particularly Social Security numbers and financial information, fraudulent use of that information and damage to victims may continue for years.

### Defendant Violated the Gramm-Leach-Bliley Act

70.     Defendant is an automotive dealer that provides credit, gives financial advice, and arranges financing or leasing options, and therefore is subject to the Gramm-Leach-Bliley Act ("GLBA").

71.     Defendant collects nonpublic personal information, as defined by 15 U.S.C. § 6809(4)(A), 16 C.F.R. § 313.3(n) and 12 C.F.R. § 1016.3(p)(1). Accordingly, during the relevant time period Defendant was subject to the requirements of the GLBA, 15 U.S.C. §§ 6801.1 et seq., and is subject to numerous rules and regulations promulgated on the GLBA Statutes. The GLBA Privacy Rule became effective on July 1, 2001. *See* 16 C.F.R. Part 313. Since the enactment of the Dodd-Frank Act on July 21, 2010, the Consumer Financial Protection Bureau ("CFPB") became

responsible for implementing the Privacy Rule. In December 2011, the CFPB restated the implementing regulations in an interim final rule that established the Privacy of Consumer Financial Information, Regulation P, 12 C.F.R. § 1016 ("Regulation P"), with the final version becoming effective on October 28, 2014.

72.     Accordingly, Defendant's conduct is governed by the Privacy Rule prior to December 30, 2011, and by Regulation P after that date.

73.     Both the Privacy Rule and Regulation P require financial institutions to provide customers with an initial and annual privacy notice. These privacy notices must be "clear and conspicuous."16 C.F.R. §§ 313.4 and 313.5; 12 C.F.R. §§ 1016.4 and 1016.5. "Clear and conspicuous means that a notice is reasonably understandable and designed to call attention to the nature and significance of the information in the notice." 16 C.F.R. § 313.3(b)(1); 12 C.F.R. § 1016.3(b)(1). These privacy notices must "accurately reflect[] [the financial institution's] privacy policies and practices." 16 C.F.R. § 313.4 and 313.5; 12 C.F.R. §§ 1016.4 and 1016.5. They must include specified elements, including the categories of nonpublic personal information the financial institution collects and discloses, the categories of third parties to whom the financial institution discloses the information, and the financial institution's security and confidentiality policies and practices for nonpublic personal information. 16 C.F.R. § 313.6; 12 C.F.R. § 1016.6. These privacy notices must be provided "so that each consumer can reasonably be expected to receive actual notice." 16 C.F.R. § 313.9; 12 C.F.R. § 1016.9. As alleged herein, Defendant violated the Privacy Rule and Regulation P.

74.     Upon information and belief, Defendant failed to provide annual privacy notices to customers after the customer relationship ended, despite retaining these customers' PII and storing and/or sharing that PII on its network.

75.    Defendant failed to adequately inform its customers that it was storing and/or sharing, or would store and/or share, the customers' PII on its inadequately secured network and would do so after the customer relationship ended.

76.    The Safeguards Rule, which implements Section 501(b) of the GLBA, 15 U.S.C. § 6801(b), requires institutions to protect the security, confidentiality, and integrity of customer information by developing a comprehensive written information security program that contains reasonable administrative, technical, and physical safeguards, including: (1) designating one or more employees to coordinate the information security program; (2) identifying reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information, and assessing the sufficiency of any safeguards in place to control those risks; (3) designing and implementing information safeguards to control the risks identified through risk assessment, and regularly testing or otherwise monitoring the effectiveness of the safeguards' key controls, systems, and procedures; (4) overseeing service providers and requiring them by contract to protect the security and confidentiality of customer information; and (5) evaluating and adjusting the information security program in light of the results of testing and monitoring, changes to the business operation, and other relevant circumstances. 16 C.F.R. §§ 314.3 and 314.4. As alleged herein, Defendant violated the Safeguard Rule.

77.    Defendant failed to assess reasonably foreseeable risks to the security, confidentiality, and integrity of PII in its custody or control.

78.    Defendant failed to design and implement information safeguards to control the risks identified through risk assessment, and regularly test or otherwise monitor the effectiveness of the safeguards' key controls, systems, and procedures.

79.    Defendant failed to adequately oversee service providers.

80.    Defendant failed to evaluate and adjust its information security program in light of the results of testing and monitoring, changes to the business operation, and other relevant circumstances.

### Defendant Violated the FTC Act

81.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

82.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Nationwide Class.

### Plaintiff Michelle Morelli's Experience

83.    Plaintiff was required to provide and did provide her PII to Defendant during the course of her employment with Defendant.  The PII included her name, address, Social Security Numbers, driver's license number, and other financial and tax information.

84.    To date, Koons has done next to nothing to adequately protect Plaintiff and Class Members, or to compensate them for their injuries sustained in this Data Breach.

85.    Defendant's data breach notice letter downplays the theft of Plaintiff's and Class Members PII, when the facts demonstrate that the PII was targeted, accessed, and exfiltrated in a criminal cyberattack. The fraud and identity monitoring services offered by Defendant are only for

one year, and it places the burden squarely on Plaintiff and Class Members by requiring them to expend time signing up for the service and addressing timely issues when the service number for enrollment does not work properly.

86.    Plaintiff and Class Members have been further damaged by the compromise of their PII.

87.    Plaintiff Morelli's PII was compromised in the Data Breach, and was likely stolen and in the hands of cybercriminals who illegally accessed Koons' network for the specific purpose of targeting the PII.

88.    Plaintiff Morelli typically takes measures to protect her PII, and is very careful about sharing her PII. Morelli has never knowingly transmitted unencrypted PII over the internet or other unsecured source.

89.    Plaintiff Morelli stores any documents containing her PII in a safe and secure location, and she diligently chooses unique usernames and passwords for her online accounts.

90.    As a result of the Data Breach, Plaintiff has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach. She monitors accounts and credit scores and has sustained emotional distress. This is time that was lost and unproductive and took away from other activities and duties.

91.    Plaintiff also suffered actual injury in the form of damages to and diminution in the value of her PII—a form of intangible property that she entrusted to Defendant for the purpose of obtaining services from Defendant, which was compromised in and as a result of the Data Breach.

92.    Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

93.     Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII, especially her Social Security Number, being placed in the hands of criminals.

94.     Defendant obtained and continues to maintain Plaintiff's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure. Defendant required the PII from Plaintiff when she received services from Defendant. Plaintiff, however, would not have entrusted her PII to Defendant had she known that it would fail to maintain adequate data security. Plaintiff's PII was compromised and disclosed as a result of the Data Breach.

95.     As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## CLASS ALLEGATIONS

96.     Plaintiff brings this suit on behalf of herself and a class of similarly situated individuals under Federal Rule of Civil Procedure 23, which is preliminarily defined as:

> **All persons Jim Koons Automotive Company identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach.**

97.     Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

98.    **Numerosity.** The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, public news reports indicate that approximately 114,000 individuals had their PII compromised in this Data Breach. The identities of Class Members are ascertainable through Koons' records, Class Members' records, publication notice, self-identification, and other means.

99.    **Commonality.** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

     a. Whether Koons unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' PII;

     b. Whether Koons failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

     c. Whether Koons data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

     d. Whether Koons data security systems prior to and during the Data Breach were consistent with industry standards;

     e. Whether Koons owed a duty to Class Members to safeguard their PII;

     f. Whether Koons breached its duty to Class Members to safeguard their PII;

     g. Whether computer hackers obtained Class Members' PII in the Data Breach;

     h. Whether Koons knew or should have known that its data security systems and monitoring processes were deficient;

    i.   Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Koons' misconduct;

    j.   Whether Koons' conduct was negligent;

    k.   Whether Koons' conduct was *per se* negligent, and;

    l.   Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

100.   **Typicality.** Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of every other Class member, was compromised in the Data Breach.

101.   **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel is competent and experienced in litigating Class actions, including data privacy litigation of this kind.

102.   **Predominance.** Koons has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

103.   **Superiority.** A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to

individual Class Members, which would establish incompatible standards of conduct for Koons. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

104.    Koons has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

105.    Likewise, particular issues under Federal Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.  Whether Koons owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII;

    b.  Whether Koons' security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

    c.  Whether Koons' failure to institute adequate protective security measures amounted to negligence;

    d.  Whether Koons failed to take commercially reasonable steps to safeguard consumer PII; and

    e.  Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the data breach.

106.    Finally, all members of the proposed Class are readily ascertainable. Koons has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Koons.

**FIRST CAUSE OF ACTION**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Class)**

107.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 106.

108.    Koons knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

109.    Koons had a duty under common law to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' PII.

110.    Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were wrongfully disclosed.

111.    By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

112.    Koons had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair. . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

113.    Koons had a duty to employ reasonable security measures and otherwise protect the PII of Plaintiff and Class Members pursuant to in VA Code § 18.2-186.6.

114.    Koons, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' PII within Koons' possession.

115.    Koons, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' PII.

116.    Koons, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the PII within Koons' possession might have been compromised and precisely the type of information compromised.

117.    Koons' breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' PII to be compromised.

118.    As a result of Koons' ongoing failure to notify Plaintiff and Class Members regarding the type of PII has been compromised, Plaintiff and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

119.    Koons' breaches of duty caused Plaintiff and Class Members to suffer from identity theft, loss of time and money to monitor their finances for fraud, and loss of control over their PII.

120.    As a result of Koons' negligence and breach of duties, Plaintiff and Class Members are in danger of imminent harm in that their PII, which is still in the possession of third parties, will be used for fraudulent purposes.

121.    Plaintiff seeks the award of actual damages on behalf of herself and the Class.

122.    In failing to secure Plaintiff's and Class Members' PII and promptly notifying them of the Data Breach, Koons is guilty of oppression, fraud, or malice, in that Koons acted or failed to act with a willful and conscious disregard of Plaintiff's and Class Members' rights. Plaintiff, therefore, in addition to seeking actual damages, seeks punitive damages on behalf of herself and the Class.

123.    Plaintiff seeks injunctive relief on behalf of the Class in the form of an order compelling Koons to institute appropriate data collection and safeguarding methods and policies with regard to patient information.

**<u>SECOND CAUSE OF ACTION</u>**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

124.    Plaintiff re-alleges and incorporate by reference Paragraphs 1 through 106 above as if fully set forth herein.

125.    Plaintiff and Class Members were required to provide their PII to Defendant as a condition of their use of Defendant's services, or as a condition of employment with Koons.

126.    Plaintiff and Class Members paid money to Defendant and disclosed their PII in exchange for services, along with Defendant's promise to protect their PII from unauthorized disclosure.

127.    In its written privacy policies, Defendant Koons expressly promised Plaintiff and Class Members that it would only disclose PII under certain circumstances, none of which relate to the Data Breach.

128.    Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' PII would remain protected.

129.    There was a meeting of the minds and an implied contractual agreement between Plaintiff and Class Members and the Defendant, under which Plaintiff and Class Members would provide their PII in exchange for Defendant's obligations to: (a) use such PII for business purposes only, (b) take reasonable steps to safeguard that PII, (c) prevent unauthorized disclosures of the PII, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII, (e) reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the PII only under conditions that kept such information secure and confidential.

130.    When Plaintiff and Class Members provided their PII to Defendant Koons as a condition of obtaining Koons' services, or as a condition precedent to receiving automotive services and automotive purchasing and leasing, they entered into implied contracts with Defendant pursuant to which Defendant agreed to reasonably protect such information.

131.    Defendant solicited, invited, and then required Class Members to provide their PII as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their PII to Defendant.

132.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

133.     Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure. Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

134.     Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

135.     Defendant breached their implied contracts with Class Members by failing to safeguard and protect their PII.

136.     As a direct and proximate result of Defendant' breaches of the implied contracts, Class Members sustained damages as alleged herein.

137.     Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

138.     Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**THIRD CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

139.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 106.

140.     This claim is plead in the alternative to the Second Cause of Action for breach of implied contract.

141.    Defendant benefited from receiving Plaintiff's and Class Members' PII by its ability to retain and use that information for its own benefit. Defendant understood this benefit.

142.    Defendant also understood and appreciated that Plaintiff's and Class Members' PII was private and confidential, and its value depended upon Defendant maintaining the privacy and confidentiality of that information.

143.    Plaintiff and Class Members conferred a monetary benefit upon Defendant in the form of purchasing services from Defendant, and in connection thereto, by providing their PII to Defendant with the understanding that Defendant would pay for the administrative costs of reasonable data privacy and security practices and procedures. Specifically, they were required to provide Defendant with their PII. In exchange, Plaintiff and Class members should have received adequate protection and data security for such PII held by Defendant.

144.    Defendant knew Plaintiff and Class members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the PII of Plaintiff and Class Members for business purposes.

145.    Defendant failed to provide reasonable security, safeguards, and protections to the PII of Plaintiff and Class Members.

146.    Under the principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures mandated by industry standards.

147.    Defendant wrongfully accepted and retained these benefits to the detriment of Plaintiff and Class Members.

148.    Defendant's enrichment at the expense of Plaintiff and Class Members is and was unjust.

149.    As a result of Defendant's wrongful conduct, as alleged above, Plaintiff and the Class Members are entitled to restitution and disgorgement of all profits, benefits, and other compensation obtained by Defendant, plus attorneys' fees, costs, and interest thereon.

### FOURTH CAUSE OF ACTION
### NEGLIGENCE *PER SE*
### (On Behalf of Plaintiff and the Class)

150.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 106.

151.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendant of failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of Defendant's duty.

152.    Defendant violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect PII and not complying with industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII obtained and stored and the foreseeable consequences of a data breach on Defendant's systems.

153.    Koons' duty to use reasonable security measures also arose under the GLBA, under which Koons was required to protect the security, confidentiality, and integrity of customer information by developing a comprehensive written information security program that contains reasonable administrative, technical, and physical safeguards.

154.    Defendant's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence per se.

155.    Koons' violation of the GLBA and its Safeguards Rule constitutes negligence *per se*.

156.    Class members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes), and the GLBA, were intended to protect.

157.    Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members. The GLBA, with its Safeguards Rule, was similarly intended.

158.    As a direct and proximate result of Defendant Koons' negligence, Plaintiff and Class Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost benefit of their bargains and overcharges for services; and other economic and non-economic harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and Class Members, request judgment against Defendant and that the Court grant the following:

A.    For an order certifying the Class, as defined herein, and appointing Plaintiff and her Counsel to represent each such Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C.    For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.    requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

iii.    requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.    requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members;

v.    prohibiting Defendant from maintaining the PII of Plaintiff and Class Members on a cloud-based database;

vi.    requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.    requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.    requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.    requiring Defendant to conduct regular database scanning and securing checks;

xi.    requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii.    requiring Defendant to conduct internal training and education routinely and continually, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.   requiring Defendant to implement a system of tests to assess its employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv.   requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.   requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential PII to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.   requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.   For an award of damages, including actual, statutory, nominal, and consequential damages, as allowed by law in an amount to be determined;

E.   For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.    For prejudgment interest on all amounts awarded; and

G.    Such other and further relief as this Court may deem just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.


February 3, 2022                          Respectfully, submitted,


                                           _/s/Gary E. Mason_____
                                           Gary E. Mason (MD Fed. Bar No. 15033)
                                           David K. Lietz (*pro hac vice* forthcoming)
                                           **MASON LIETZ & KLINGER LLP**
                                           5101 Wisconsin Avenue NW, Ste. 305
                                           Washington, D.C. 20016
                                           Phone: 202-429-2290
                                           Fax: (202) 429-2294
                                           *dlietz@masonllp.com*

                                           Terence R. Coates (*pro hac vice* forthcoming)
                                           **MARKOVITS, STOCK & DEMARCO, LLC**
                                           3825 Edwards Road, Suite 650
                                           Cincinnati, OH 45209
                                           Phone: (513) 651-3700
                                           Fax: (513) 665-0219
                                           *tcoates@msdlegal.com*

                                           *Counsel for Plaintiff and the Class*